IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLAIR DOUGLASS,<br><br>   Plaintiff,<br><br>   v.<br><br>HUSQVARNA PROFESSIONAL PRODUCTS, INC.,<br><br>   Defendant. | 2:25-CV-00771-CCW |

### OPINION

Before the Court is Plaintiff Blair Douglass' unopposed Motion to Certify the Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement. For the reasons that follow, the Motion will be GRANTED.

**I.   Background**

On April 21, 2022, Mr. Douglass, who is blind,[1] filed a class-action complaint against Husqvarna, LCC, alleging that Husqvarna "fail[ed] to effectively communicate with Douglass because [Husqvarna's] Website is not sufficiently compatible with screen reader auxiliary aids" in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. ECF No. 1 ¶ 6. Specifically, Mr. Douglass alleges that he attempted to access Husqvarna's online store using a screen reader but was unable to because Husqvarna's online store is incompatible with screen-access software. *Id.* at ¶¶ 37–44. Mr. Douglass brought a single claim under the ADA, seeking injunctive, declaratory, and monetary relief including attorneys' fees. *Id.* at 19–24. He

---

[1] The Court uses the word "blind" broadly "to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access digital information, like a Word document, email, text, or website." *Douglass v. Optavia LLC*, Civ. A. No. 2:22-CV-00594-CCW, 2022 WL 4281546, at *1 n.1 (W.D. Pa. Sept. 14, 2022) (Wiegand, J.)

amended his complaint to reflect the correct Defendant, Husqvarna Professional Products, Inc. ECF No. 12.

Mr. Douglass' suit came after he first contacted Husqvarna in July 2024 about its online store's accessibility issues. *Id.* at ¶ 38; *see Sipe v. Am. Casino & Ent. Properties, LLC*, Civ. A. No. 16CV124, 2016 WL 1580349, at *3 (W.D. Pa. Apr. 20, 2016) (Schwab, J.) ("[P]re-litigation solutions [are] clearly[] the most expedient and cost-effective means of resolving legal matters."). Although the parties did not reach a resolution, they apparently agreed that Mr. Douglass filing suit would be the best path forward. ECF No. 15 at ¶ 7 ("As a result of the parties' shared desire to achieve the best possible solution, Plaintiff filed a class action complaint on June 6, 2025[.]"). On August 14, 2025, Mr. Douglass filed the instant Motion, seeking preliminary approval of a class-action settlement and conditional certification of a class for settlement purposes, which Husqvarna does not oppose. *Id.* The settlement, if approved, includes comprehensive injunctive relief that should ensure that within 24 months, Husqvarna's digital platforms are accessible to blind individuals using screen-access software, in addition to a $2,000 award to the named plaintiff. ECF No. 15-1 at 2 (defining the "Agreement Term" as two years after the effective date of the agreement), 4. Additionally, proposed Class Counsel may apply to the Court for payment of up to $73,000 in attorneys' fees for work within the Agreement Term, as well as $15,000 for each additional year, up to two years, that it takes Husqvarna to make its platforms accessible. *Id.* at 37. Mr. Douglass' Unopposed Motion for Settlement seeks preliminary approval of the settlement under Federal Rule of Civil Procedure 23. ECF No. 15.

**II.     Standard of Review**

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).

Furthermore, where the settlement would bind class members, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).  Accordingly, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e)." *Torres v. Brandsafway Indus. LLC*, Civ. A. No. 2:21-CV-01771-CCW, 2023 WL 346667, at *1 (W.D. Pa. Jan. 20, 2023) (Wiegand, J.) (quoting *In re NFL Players Concussion Injury Litig.* ("*NFL II*"), 775 F.3d 570, 581 (3d Cir. 2014)).

Courts in the Third Circuit generally follow a two-step process for approval of class settlements.  First, "the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'" *In re NFL Players' Concussion Injury Litig.* ("*NFL I*"), 961 F. Supp. 2d 708, 713–14 (E.D. Pa. Jan. 14, 2014) (quoting *Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("*MCL*")).  At the preliminary approval stage,

> the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*NFL I*, 961 F. Supp. 2d at 714 (quoting *Thomas v. NCO Fin. Sys.*, Civ. A. No. 00–5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)).  According to the United States Court of Appeals for the Third Circuit, there is "an initial presumption of fairness when the court finds that:  (1) the negotiations occurred at arm's length;  (2) there was sufficient discovery;  (3) the proponents of the settlement are experienced in similar litigation;  and (4) only a small fraction of the class

3

objected." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GMC*"), 55 F.3d 768, 785 (3d Cir. 1995).[2]

Even though there is a "strong presumption" in favor of class settlements, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010), "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *NFL I*, 961 F. Supp. 2d at 714 (citation omitted). As such, "[j]udicial review must be exacting and thorough," *id.* (quoting *MCL* § 21.61), such that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, Civ. A. No. 09-3905 (RMB/JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011) (citation omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("[I]n cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." (quoting *GMC*, 55 F.3d at 805)).

If approval of the proposed class settlement is sought contemporaneously with certification of the class—that is, when the parties agree to a class-wide settlement "before the district court has issued a certification order under Rule 23(c)"—then "'the certification hearing and preliminary fairness evaluation can usually be combined.'" *NFL II*, 775 F.3d at 581–82 (quoting *MCL* § 21.632). When doing so,

---

[2] At the final approval stage, a more demanding test applies, requiring the Court to examine the so-called *Girsh* factors:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

> [t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* at 582–83 (quoting *MCL* § 21.632) (internal citation omitted). Thus, a district court may provisionally certify a class under Rule 23(e) to facilitate notice to absent class members, fairly and efficiently resolve litigation, and preserve the resources of the court and the litigants, "allow[ing] the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims." *Id.* at 583.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," if such notice is justified by a showing that the Court will "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Amendments to Fed. R. Civ. P. 23 took effect on December 1, 2018, clarifying the standards governing preliminary and final approval of class settlements. *Ward v. Flagship Credit Acceptance LLC*, Civ. A. No. 17-2069, 2020 WL 759389, at *4 (E.D. Pa. Feb. 13, 2020). As amended, Rule 23(e)(2) requires the Court to consider the following factors in evaluating the fairness, reasonableness, and adequacy of a settlement proposal:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Advisory committee notes of the 2018 amendment to Rule 23(e)(2) acknowledge that "each circuit has developed its own vocabulary" and "list[] of factors" for analyzing the fairness, reasonableness, and adequacy of a settlement proposal. Rule 23(e)(2) does not "displace any factor" analyzed by circuit courts prior to the 2018 amendment, "but rather [focuses] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment; *Ward*, 2020 WL 759389, at *5. Thus, the Rule 23(e)(2) factors guide the Circuit Courts' existing analytical frameworks for settlement approval. *Lewis-Abdulhaadi v. Union Sec. Insurance Co.*, Civ. A. No. 21-cv-03805-WB, 2025 WL 1510577, at *2 (E.D. Pa. Mar. 20, 2025) ("The factors set forth in Rule 23(e)(2) augment, rather than replace, the traditional factors developed by courts to assess the fairness of a class action settlement."); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 322 n.2 (3d Cir. 2019) (applying the existing framework within the Third Circuit after the publication of the 2018 amendment).

**III.    Analysis**

    **A.    The Court Will Preliminarily Approve the Proposed Settlement**

For preliminary approval of the proposed settlement, the Court begins with an analysis of the *GMC* factors, which, applied here, demonstrate that the settlement is entitled to a presumption of fairness. First, the agreement is the result of months of negotiation involving counsel experienced with similar settlements in similar cases; thus, it appears to be the result of arms-length negotiations. *See* ECF No. 16 at 14. Second, although discovery has not occurred in this case, that is insignificant here, where the facts are largely undisputed, and Mr. Douglass' counsel engaged in investigation into Husqvarna's digital platforms and their accessibility. *Id.* at 14, 17. Third, counsel for Mr. Douglass have significant experience in similar class cases alleging

disability discrimination. *See generally* ECF Nos. 15-3, 16 at 12. The final *GMC* factor—the subset of class members who have objected to the settlement—cannot yet be analyzed. On balance, the *GMC* factors favor preliminary approval, and a presumption of fairness therefore attaches.

The Court further concludes that the settlement is free from any "obvious deficiencies" that indicate that the settlement is not "fair, reasonable, and adequate" under Rule 23(e)(2). The first two factors under Rule 23(e)(2), (A) and (B), "constitute the 'procedural' aspects of the fairness analysis, and 'look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *Ward*, 2020 WL 759389, at *5 (quoting Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment). Here, under Rule 23(e)(2)(A), the class representatives and proposed Class Counsel appear to have "adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). Proposed Class Counsel are experienced in similar litigation and have conducted "multiple rounds of end-user reviews to determine whether the Website is fully and equally accessible to blind consumers." ECF No. 16 at 14. Further, as discussed above, settlement negotiations appear to have occurred at arm's length as required by Rule 23(e)(2)(B). Thus, the Court finds no evidence of procedural fairness defects under Rule 23(e)(2)(A) or (B).

The final two factors, Rule 23(e)(2)(C) and (D), guide the "substantive" review of the proposed settlement and require courts to analyze the "relief that the settlement is expected to provide." Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment. The Court concludes that the settlement appears to fall within the range of possible approval. The agreement would include comprehensive injunctive relief that should ensure that within 24 months, Husqvarna's digital platforms are accessible to blind individuals using screen-access software. ECF No. 15-1 at 2, 11. In addition, the proposed agreement includes a $2,000 service award to

Mr. Douglass. *Id.* at 16. Under Rule 23(e)(2)(C), the Court must also consider "the terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). The agreement permits proposed Class Counsel to apply to the Court for up to $73,000 in attorneys' fees for work within the Agreement Term, as well as $15,000 for each additional year, up to two years, that it takes Husqvarna to make its platforms accessible. ECF No. 15-1 at 18–19. Here, the agreement mirrors the relief obtained in other cases involving similar claims in this and other districts. *See Douglass v. iFIT Inc.,* Civ. A. No. 2:23-cv-00917, ECF Nos. 18-1 at 15–16, 29 (W.D. Pa. Apr. 11, 2024) ("*iFIT*") (Horan, J.) (preliminarily approving injunctive relief, a $1,500 service award to the Plaintiff, and up to $83,000 in attorneys' fees)*; Murphy v. Eyebobs, LLC*, Civ. A. No. 1:21-cv-00017, 2022 WL 22934663 (W.D. Pa. Feb. 9, 2022) ("*Eyebobs*") (Lanzillo, J.); *Murphy v. Charles Tyrwhitt, Inc.*, Civ. A. No. 1:20-cv-00056, ECF No. 47 (W.D. Pa. Feb. 16, 2022) ("*Charles Tyrwhitt*") (Baxter, J.); *Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*, Civ. A. No. 14-CV-04086 NC, 2016 WL 9000699, at *1 (N.D. Cal. July 13, 2016). Notably, although the agreement contemplates a release of claims by class members for injunctive and declaratory relief, it does not preclude class members from bringing subsequent claims for money damages. In light of the risks inherent in this litigation, which Mr. Douglass has set forth in his briefing, the settlement appears to be a reasonable resolution of the claim. ECF No. 16 at 16–17.

The final Rule 23(e)(2) factor requires courts to analyze whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). All Class Members are subject to equal treatment under the proposed agreement. ECF No. 15-1. Additionally, there does not appear to be any unduly preferential treatment of Mr. Douglass, who will receive a $2,000 service award. *Id.* at 16. That amount is in line with service awards approved or preliminarily approved in comparable cases. *See, e.g.*, *iFIT,* Civ. A. No. 2:23-cv-00917, ECF Nos. 14 at 7, 15;

*Eyebobs*, 2022 WL 22934663, at *11; *Charles Tyrwhitt,* Civ. A. No. 1:20-cv-00056, ECF Nos. 19-1 at 12, 32. Therefore, the Court concludes that the settlement agreement satisfies Fed. R. Civ. P. 23(e)(2)(D).

In sum, there being "no obvious deficiencies" and the settlement "fall[ing] within the range of reason," *Zimmerman*, 2011 WL 65912, at *2, the Court finds for the purposes of preliminary approval that the proposed settlement appears to be "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

      **B.**      **The Court Will Provisionally Certify the Rule 23 Class**

Turning to provisional certification, Mr. Douglass seeks to certify "a national class" under Rule 23(b)(2), of

> individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States.

ECF No. 15 ¶ 9. For the following reasons, the Court finds provisional certification appropriate under Rules 23(a) and 23(b)(2).

As to Rule 23(a), Mr. Douglass must make a preliminary showing of numerosity, commonality, typicality, and that the representatives of the class will "fairly and adequately protect the interests of the class." Numerosity—that the class is so large that joinder would be impracticable—may be inferred from the fact that Husqvarna's website is available throughout the United States, where there are approximately 2 million people who are blind and another 8.1 million people who have difficulty seeing. *See* ECF No. 16 at 8–9; *Douglass v. Optavia LLC*, Civ. A. No. 2:22-CV-00594-CCW, 2022 WL 4281546, *4 (W.D. Pa. Sept. 14, 2022) (Wiegand, J.); *Murphy v. Hundreds Is Huge, Inc.*, Civ. A. No. 1:21-cv-00204, 638 F. Supp. 3d 486, 495–96 (W.D. Pa. June 10, 2022) (Lanzillo, J.); *iFIT*, Civ. A. No. 2:23-cv-00917, ECF Nos. 14 at 8–9,

9

15; *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (finding numerosity requirement satisfied based on evidence that there were 175,000 wheelchair users in California and that thousands of people used the defendant's 70 theatres)). Nor do commonality and typicality pose a significant obstacle at this stage. For commonality, Mr. Douglass must show that there are "questions of law and fact common to the class," Fed. R. Civ. P. 23(a)(2), which is the case here because all members have the same interest in ensuring the accessibility of Husqvarna's digital platforms based on the same legal theory under the ADA. *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) ("Commonality does not require perfect identity of questions of law or fact among all class members."). And for typicality, Mr. Douglass may show a "strong similarity" between claims and defenses for himself and the class, which he does because all class members are proceeding on the same legal theory with respect to the accessibility of Husqvarna's website. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal quotations omitted). Finally, at this stage, there do not appear to be any conflicts of interest and counsel appear to be competent to represent the interests of the class. *See In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. Dec. 7, 2012) ("According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests." (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007))). Accordingly, Mr. Douglass has made a preliminary showing that he can satisfy the requirements of a class action found in Rule 23(a).

With respect to Rule 23(b)(2), "[a] class action may be maintained" if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

This case fits neatly within Rule 23(b)(2), which is commonly invoked in similar ADA cases. *See, e.g.*, *Optavia*, 2022 WL 4281546 (preliminarily approving settlement between blind class members and online retailer); *Eyebobs,* 2022 WL 22934663 (approving the same); *Charles Tyrwhitt*, Civ. A. No. 1:20-cv-00056, ECF Nos. 30, 32. Husqvarna failed to maintain its digital platforms in a manner that made them compatible with screen-access software—grounds that apply generally to all members of the class. The injunctive relief sought here will remedy the deficiencies in Husqvarna's digital platforms, making it appropriate for the class as a whole. *See Optavia*, 2022 WL 4281546; *Eyebobs*, 2022 WL 22934663. Thus, the proposed class appears to satisfy Rule 23(b)(2) in addition to Rule 23(a) and provisional certification is therefore appropriate.

Because Mr. Douglass has made a preliminary showing that he can satisfy the requirements of Rule 23(a) and 23(b)(2), the Court will provisionally certify a class of "individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States." ECF No. 15 ¶ 9.

### C.     The Proposed Notice is Reasonable

Finally, the Court considers the parties' plan for the dissemination of notice. Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Where, as here, the class is to be certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

The Court has reviewed (1) the proposed notice form; (2) the proposed notice plan, including its provisions ensuring that blind individuals have access to the plan using screen readers; and (3) the timeline for disseminating notice, for filing applications for attorneys' fees and costs, for filing the incentive award application, and for filing objections. *See* ECF Nos. 15-

1, 15-2. After reviewing the materials submitted by Mr. Douglass, the Court finds that Mr. Douglass' notice plan complies with Rule 23 and will order that notice be given consistent with the notice plan set forth in the settlement agreement.

## IV.    Conclusion

For the foregoing reasons, the Court will GRANT Mr. Douglass' Motion and enter an order: (1) preliminarily approving the settlement; (2) provisionally certifying the class for settlement purposes only; (3) directing notice to be given consistent with Mr. Douglass' notice plan; (4) appointing Kevin Tucker, Kevin Abramowicz, Chandler Steiger, Stephanie Moore, Kayla Conahan, and Jessica Liu of East End Trial Group LLC as Class Counsel; (5) adopting the objection procedures set forth in the settlement; and (6) setting a fairness hearing and associated deadlines.

DATED this 7th day of November, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record